## State *v.* Joseph R. Staples.

When, upon cross examination, the interrogatories put tend to impute crime, or to disgrace the witness, the court is bound to interfere, and lend the prompt protection afforded by the law.   An accomplice in crime offered as a witness by the State is entitled to this privilege from the court.

It was a proper fact to submit to the jury from the whole conversation in relation to the coat of Warren, and other thefts committed, whether this was one of the cases the respondent had in his mind among the rest, about which he solicited the aid of the witness, and for assistance he was willing to pay him money.   In criminal proceedings the statements of a living witness, and within the jurisdiction of the court, sworn to at a previous trial, are not admissible.

This is an indictment, and the first count charges the entering of the house of Charles E. Warren in the night time and stealing therefrom a coat and some children's garments ; and the second count charges the breaking and entering of the same house and stealing the same goods in the day time.

At the trial here the said Warren was examined as a witness for the prosecution, and his evidence tended to show the loss of the goods by stealing from his house and the time when it was done ; but nothing to implicate the respondent.   On the cross-examination his counsel proposed to ask the witness if he had not said that he did not believe the respondent was guilty ; but the court ruled that the question could not be put, and the respondent excepted.

It appeared that the respondent was in the employment of the Boston & Maine Railroad at Exeter depot at the time said goods were taken

and since; and as bearing upon the question how he came into possession of the coat, which had been considerably worn by said Warren, he offered evidence to show that it was common for workmen on the railroad about that depot to buy second-hand coats; but the court, against the respondent's exception, ruled that the evidence was incompetent.

It appeared in evidence that the goods stolen, with various other goods stolen from different individuals, were found concealed under the house occupied by Mrs. Mary A. Brown, and the evidence tended to implicate her with the stealing of all those goods, and there was also evidence tending to prove that in a day or two after the loss of Warren's goods the respondent had the coat in his possession, and wore it openly, and also tending to prove that he stole it from Warren's house. The prosecution was allowed, against the respondent's exception, to introduce evidence to prove that about the time of the loss of Warren's goods, and for months before and after, the respondent, a married man, was very intimate with Mrs. Brown, visiting her at her house several times a week, in the evening, and that this intimacy existed during the whole period from September 1, 1864, to March 1, 1865; it appearing that these goods were lost about the last of November, 1864, and found at Mrs. Brown's about March 1, 1865.

The respondent's counsel proposed, on cross examination of Mrs. Mary A. Brown, to ask her if she had not about the time of the commission of the offence charged in this indictment, committed other larcenies, and also if she had not, to indictments for other larcenies committed about the same time, pleaded *nolo contendere;* and also if she had not last March charged innocent persons with stealing goods other than those of Mr. Warren, and confessed it; and it appeared by her own testimony and admissions by State's counsel, that she was an accomplice in the offences charged. But the court, against the defendant's exception, ruled that none of these inquiries were admissible. The respondent introduced evidence to impeach the general reputation of Mrs. Brown for truth, and no evidence in reply was offered.

It appeared that among the goods found under Mrs. Brown's house were some stolen from Albert Janvrin, and also from some other persons, and that the respondent was prosecuted for stealing them as early as March last, and was in jail on account of those charges, but had not then been prosecuted for stealing the Warren goods; and the government was allowed, against the respondent's exception, to introduce the testimony of Patrick Brothers, that while so confined in jail the respondent said he would give the witness fifty dollars if he would help him out of the Albert Janvrin case, and try to help him out of the rest of the cases, and would swear that witness and Staples were out of town when the Janvrin goods were stolen; and that he spoke about a coat and said he was innocent of it, that he got it of Mrs. Brown, who told him to take it, and keep it out of the way.

It appeared that on a former trial of this indictment the wife of the said Warren testified for the prosecution, and that she had been summoned by the State and also by the respondent to attend at this trial; but, as was shown by the testimony of her physician, was sick and un-

able to attend, her residence being at Exeter in this State; and it also appeared that respondent and his counsel expected she would be present as a witness on this trial for the State, until after the trial was commenced, and the respondent thereupon offered to prove what she had testified to on the former trial as aforesaid; but the court rejected the evidence and the defendant excepted. The respondent offered this evidence to prove the precise day when the offence was committed, and other material things, one branch of the defence being an *alibi.*

Ordered, that the questions of law arising on the foregoing case be reserved and assigned for the determination of the whole court at its next Law Term for this county.

*Small,* for respondent, upon the point of *presumption* of *guilt,* arising from the possession of stolen goods, whether and when conclusive, cited: 3 Greenleaf's Evid., secs. 31, 32 and 33; *State* v. *Merrick,* 19 Maine 398; *Rex* v. *Adams,* 14 C. Law Reports 474; 3 Phil. Evidence, 737, note 2; Wells on Circumstantial Evid., 54 and 48; Wat. Archbold, 370, and note; 2 Wat. Archbold, 369; also, *Regina* v. *Cowper,* 47 Com. Law Rep. 370.

2. That his proposed inquiries made to the witness, the accomplice of the respondent, as to other larcenies committed by her, and her pleadings, &c., thereto, &c., were admissible, the counsel cited, *Regina* v. *Overton,* 41 C. Law R. 355; *Hathaway* v. *Crocker,* 7 Met. 266; *Thomas* v. *Davis,* 47 C. L. Rep. 537; *Rex* v. *Edwards,* 47 C. L. Rep. 440; 2 Phil. Evid. 899; 1 Starkie Evid. 195-7; 1 Green. Evid. secs. 455, 459.

3. That the testimony of Brothers was inadmissible. 2 Russell on Crimes, Book 6, chap. 2, sec. 2, p. 773; 1 Phil. Evid. 765 to 768 inclusive.

4. The evidence of Mrs. Warren on a former trial of this case should have been received. 1 Green. Evid. sec. 163; 1 Starkie Evid. secs. 310, 311; 1 Phil. Evid. sec. 395, note; Rand's Note to the case; *Barron* v. *Crombie,* 14 Mass. 237.

*Bell,* Solicitor, for the State.

I. As to the defendant's offer to prove that it was common for the workmen about the depot of the railroad by which he was employed, to purchase second hand clothing, how could that evidence be relevant to this case? If the evidence had been that the *defendant himself* was accustomed to do so, it might be urged with more propriety that it should be admitted. But the fact that *other persons* had such a habit has no possible tendency to show that the *defendant* innocently purchased the coat in question. It would be equally competent for the State to prove that other persons about the depot had a habit of stealing, as a ground for asking the jury to infer that the defendant was guilty.

II. As to the inquiries proposed to Mrs. Brown on her cross-examination. The inquiries were:

1.  If she had not committed other larcenies; which the witness admitted, as appears by the case.

2.  If she had not pleaded *nol. con.* to indictments for other larcenies.

3.  If she had not charged innocent persons with other larcenies.

4.  If she had not confessed that she so charged innocent persons.

These inquiries were as to collateral matters, and went to disgrace or discredit the witness; and come within the vexed question which is said in our own reports, and the principal treatises on evidence, never solemnly to have been adjudicated. *Clement* v. *Brooks*, 13 N. H. 99; 1 Starkie Evid. sec. 143; 1 Greenl. Evid. sec. 459; 2 Phil. Evid. (C. & H., 4th Am. Ed.) 939.

It would seem, however, by the cases cited in these authorities, that eminent judges have differed in their rulings on the question, and the same judges have ruled in opposite ways in different cases. May not the true solution of the question be, that it is a matter to be left to the discretion of the judge who tries the case, to be settled by him according to the particular circumstances?

In the present case there was another witness to the same facts testified to by Mrs. Brown, and Mrs. Brown was only put on by the State to avoid inferences which might be drawn from her absence.

In truth, (and this, if important, might be properly added to the case,) her general character for truth was successfully impeached by a large number of witnesses, and the State could find no one to sustain it.

Her character for dishonesty and falsehood, then, was fully before the jury; and no answers to the inquiries in question could have given the jury any greater light upon her character.

III.  As to the testimony of Patrick Brothers:

It was necessary to introduce the testimony as to the Janvrin case, to show what the defendant meant, by proposing that Brothers should "help" him out of the other cases. Leave out the mention of the Janvrin case and the statement is unintelligible and comes to nothing; but as it stands, it imports an offer to pay Brothers money to help the defendant by perjury, out of other charges for larceny, one of which was the present charge.

It is to be presumed, as was the fact, that the jury were properly cautioned, so that no injury could be done the defendant by this mention of the other offences.

IV.  It is probable that our courts might permit a party to introduce evidence of what a witness for the same party testified on a former trial of the cause, in cases of insanity of the witness, and perhaps where he had been kept away by the adverse party; the same as in case of the death of the witness. But it is submitted that the court will not go further, and follow the one or two Louisiana cases, against the current of the English and American authorities. This court has already decided that such evidence cannot be received in case of the failure of recollection of the witness, in *Robinson* v. *Gilman*, 43 N. H. 295.

But in the present case the witness was called by *the prosecution* on the former trial. Now the principle on which the evidence of the former testimony is admitted, is, that the adverse party has had the opportunity of cross-examination. In this case the prosecution never had that opportunity; so, however the court might hold had the case been otherwise, the essential condition on which such evidence is receivable is wanting here.

NESMITH, J. It appears to us, that the *fact*, that second hand coats, like that taken from Warren's house, were sometimes bought and sold at the Exeter depot, by workmen on the railroad, could have but a remote tendency to explain or answer the positive testimony of the State, that the coat in question was actually identified as Warren's, and had been stolen, at a particular time, from his house, and very soon afterwards was seen on the back of the respondent himself. Such testimony could have but a slight bearing upon the controlling evidence of the case, and we think was properly rejected by the court. The first exception is therefore overruled.

The State offered Mrs. Mary A. Brown, admitted to be an accomplice of the respondent in the crime charged in the indictment. Her evidence is offered and received only under the implied condition of making a full confession of the whole truth. The respondent's counsel, on cross-examination, proposed to ask the witness "if she had not, about the time of the commission of the offence charged in the indictment, *committed* other larcenies?" Also, "if she had not pleaded *nol. con.* to an indictment for other larcenies?" "If she had not charged innocent persons with other larcenies, and confessed this fact?"

It will be readily seen, that those inquiries extended to collateral matters, and beyond the issue directly before the court. Now, where it reasonably also appears, that the answer of the witness will have a tendency to expose her to a penal liability, or to any kind of punishment, or to a criminal charge, the authorities are clear, that the witness is not bound to answer. Nor is the witness bound to testify to any particular fact, which would be but a single link in the chain of evidence which is to convict the witness. Against such inquiries the law gives the witness the full privilege of protection. *State* v. *Foster*, 23 N. H. 348; *Janvrin* v. *Scammon*, 9 N. H. 280; *Coburn* v. *Odell*, 10 N. H. 540; 1 Green. Evid. sec. 451.

But where the obvious intent of the questions was to discredit or disgrace the witness, a question is raised about which much difference of opinion has existed. On the one hand, it has been repeatedly held, that a witness cannot be forced to give an answer, which will render him infamous, or will involve him in shame and reproach. Wharton, in his Criminal Law, quotes some fifteen decisions in this country and in England in support of the preceding doctrine; *vide* note, sec. 809.

On the other hand it has been frequently decided that questions tending to elicit the truth, either as to the main facts of the case, or the character of the witness testifying in it, ought to be answered, though they may be calculated to wound the sensibility of an individual. *Rex*

v. *Edwards*, 4 Term 440, *Roberts* v. *Allett*, M. M. 192, *People* v. *Mather*, 4 Wendell 250, are the authorities relied on by Wharton in support of the last position.

It has been recently held in New York, in a case well considered, that where a witness is asked a question, the answer to which would disgrace him, but could have no bearing on the issue, except so far as it might impeach his credibility, he is privileged from answering it; *vide People* v. *Lohman*, 1 Comstock 379.

Prof. Greenleaf, after much discussion of this subject, thus states his result that the great question, whether a witness may not be bound in some cases to answer an interrogatory to his own moral degradation, where, though it is collateral to the main issue, it is relevant to his character for veracity, has not yet been brought into direct and solemn judgment, and must be regarded as an open question, and of course resting much upon the discretion of the judge who tries the case. 1 Greenleaf sec. 459. Phillips approves the doctrine, that accomplices are not to be questioned in their cross-examination as to other offences in which they have not been concerned with the prisoner. 2 Phillips on Evid. 422; Phillips & A. on Evid. 917, 918.

Upon the review of the law on this subject, the question recurs, whether by the decision of the judge who tried this case, the respondent was deprived of his just and legal rights, in consequence of the witness being told she need not answer the aforesaid questions put to her by her counsel.

The position of Mrs. Brown as a witness, was that of one tainted with admitted crime. And it appears her general character for truth was successfully impeached. She was no doubt thoroughly cross-examined upon the issue before the court, by able counsel, who never omit the discharge of duty. We are unable to perceive how the jury, who tried the cause, could have been deceived or misled by her words or conduct. And we sustain the action of the court, who tried the case, in the exercise of the discretion used by him in refusing the proposed cross-examination, and we overrule accordingly the exception of the respondent on this point. *Janvrin* v. *Scammon*, *ante*; *Hersom* v. *Henderson*, 33 N. H. 506.

The objection was also taken here, that the court cut off the privilege of the witness to answer the questions propounded, by a premature decision in her favor. Whether the answer may tend to criminate or expose the witness, is a point which the court will at once determine, under all the circumstances of the case, and without requiring the witness fully to explain how he may be criminated by the answer which the truth might oblige him to give. For if he were obliged to show how the effect would be produced, the protection, which the rule is designed to afford, would be nullified.

The doctrine in *Hersom* v. *Henderson*, 23 N. H. 506, is, that it is the duty of the court to see that witnesses are rightly protected from disgrace, especially where the questions put do not bear directly upon the issue on trial. 1 Green. Evid. 460.

The testimony of Brothers would seem to be competent, if the lan-

guage of the respondent to the witness might by fair inference embrace this prosecution or case among the rest of the cases he then had in mind. It was for the jury to determine from the whole conversation employed, especially that about the coat that he got of Mrs. Brown, "who told him to take it and keep it out of the way," whether this was one of the cases he had in his mind among the rest, about which he solicited the assistance of Brothers, and was willing to pay $50 to secure his aid.

It was settled in the indictment, *Com.* v. *Sackett & als.*, 22 Pick. 394, that the defendant had the right to ask a witness whether any person in behalf of the Government had made to the witness any offer of *reward*, in relation to the testimony he should give in a certain class of *cases*, comprehending the *case* on trial.    If the defendant could legally make so broad and comprehensive inquiry, we think for like reasons may the State.    The testimony would evidently be irrelevant, unless this attempt at bribery or subornation of perjury is made to embrace the matter of this indictment among the rest of the cases of larceny to which the offer could be made to apply.    In only this view the evidence could be regarded as relevant, and so far only, we understand it was actually used.    We are, therefore, of the opinion, that this exception should be overruled.

Mrs. Warren, wife of the prosecutor, testified on the former trial, in behalf of the State, but being sick at the time of the last trial, the respondent offered to prove what she had testified to on the former trial. The court rejected the evidence, and defendant excepted.    We have not known a practice in this State, where the witness is alive and within the jurisdiction of the court, and in criminal proceedings, to allow the former statements of the witness to be used.    Such testimony is admitted at any time only upon urgent necessity, and in violation of the familiar rule that the best testimony is to be used, and it would be an anomaly in our practice to introduce the produced former statements of a living witness, through a copyist or a bystander.    The evidence of a witness in the same cause, and at a former trial, is not admissible, until it has been first proved that he is dead.    4 Term Reports, 290 ; 17 Johnson's Rep. 176 ; 6 Cowan 162 ; 14 Mass. 234 ; Butler's Nisi Prius, 242.    In criminal proceedings especially this rule will be strictly enforced.    In many jurisdictions the proof of the death of the witness will not justify the use of his former testimony.    *People* v. *Newman*, 5 Hill, 295 ; 3 Wendell 257 ; 5 Randolph Rep. 708 ; 1 Overton 229 ; 2 Hawkins' Pleas of the Crown, sec. 12, 606 ; 1 Phil. Evid. 199.    It seems to be questioned by high authorities if such testimony be admissible at all.    2 Johnson's Rep.

*Judgment on verdict.*